## Fairella McJunkin v. The State.

### No. 9972.  Delivered March 10, 1926.

**1.—Manslaughter—Charge of Court—In Defense of Another—Error.**

Where, on a trial for manslaughter, appellant defends on the theory that she shot and killed the deceased in defense of one Banks, the court's charge submitting this issue was erroneous, in restricting the right of appellant to shoot the deceased to prevent him from murdering the said Banks, and also in requiring the jury to find that Banks was being assaulted by the deceased, with a deadly weapon, before appellant would have the right to act in defense of Banks.

**2.—Same—Continued.**

While the testimony showed that deceased was assaulting Banks with a bottle, yet there is also testimony to the effect that he had violently and viciously assaulted Banks with his fist, and the jury should have been told that appellant had the right to defend against an attack on Banks, which was less than deadly, provided she used no more force than to her seemed reasonably necessary.  Following Britton v. State, 253 S. W. 519, and other cases cited.

Appeal from the District Court of Wichita County.  Tried below before the Hon. P. A. Martin, Judge.

Appeal from a conviction of manslaughter.  Penalty two years in the penitentiary.

The opinion states the case.

*Davenport, Cummings & Crain* of Wichita Falls, for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

BERRY, Judge.—The offense is manslaughter and the punishment is two years in the penitentiary.

The appellant is a seventeen-year-old negro girl and the deceased was a white man, married and employed as a switchman in the yards of the Fort Worth & Denver Railway company.  The state's testimony shows that deceased and his brother and one Brown went to what is known as O. C. Williams' store near where deceased was working.  This was a negro store and restaurant and the defendant was a waitress in the restaurant and when deceased and his party went to the store appellant and a negro boy were therein; deceased asked for Williams and appellant said he was not

there; deceased then turned around and walked out. Brown testified that he was in the rear and deceased was in ahead of him and after they started out appellant was behind the counter and deceased made a gesture at her but Brown claims he did not touch her and the negro boy said, "Mind out what are you doing;" that deceased merely waved his hand at her and was smiling at the time. It seems from Brown's testimony that after they got out of the store some question was raised as to what the boy said to Carroll and Carroll decided he would go back and see. Carroll returned into the store and left Brown and the other party who had been with him outside and Brown testifies that immediately after Carroll returned into the store he heard the report of a gun and Carroll was found with a bullet through his head from which he afterwards died.

Apellant's version of the affair was to the effect that she and W. B. Banks, the step-son of Williams, were working in the restaurant and deceased, Brown and deceased's brother came in the store and deceased asked for Williams, the proprietor, and that appellant told him he was not there, whereupon she claims deceased said she was a damned liar and then he got a bottle of soda-water and drank it and after he drank the soda-water he again asked for Williams and she told him he was not there and he turned to walk away and slapped her and he felt down along her limbs and she looked at him and said, "Don't do that again" and Banks, the negro boy, told deceased not to do that again, that deceased turned around and walked out and came back about five minutes later and when he came in he said "You damned negroes act like you are sore at me hitting you" and she replied "Yes, it made me sore," and the negro boy, Banks, said "I don't want you to do it again," and deceased said "I will do it again if I want to and don't you get so damned smart," and he further said "I will pick up something and knock your damned brains out." After some further words, appellant testified that deceased hit her while he was over by the ice box and when she looked up he had the negro boy over in the corner against the wall and hit him some awful licks with his right fist. That there were about four or five empty soda-pop cases with some empty bottles and he picked up one of the bottles and raised up and came down like he was going to hit the boy on the head and that she then ran behind the counter and got the gun and fired, hitting deceased, from the effects of which he died. It was undisputed

that Banks' finger was hit by the same shot that killed deceased.

Complaint is made at the action of the court in submitting the law pertaining to the defense of another. On the the question of appellant's right to shoot in defense of Banks, the court instructed the jury that homicide is permitted by law for the purpose of preventing the offense of murder and then instructed the jury that if they find and believe that at the time the deceased was killed he was in the act of assaulting Banks with a soda-pop bottle and that said bottle was a deadly weapon in the manner it was being used and if it was used and that from the nature and character of such assault, if any, it reasonably appeared to the defendant judging the matter from her standpoint that the deceased was about to murder the said Banks, or to inflict on him some serious bodily injury, and that acting upon such reasonable apprehension of danger to said Banks she shot and killed the deceased then to acquit the defendant.

Appellant objected to this charge as unduly restricting her right to shoot in defense of Banks. She requested the court to give a special charge on this issue which in a measure would have cured the defect pointed out in the charge given. The vice in the charge actually given was that it in effect limited appellant's right to shoot in defense of Banks to prevent deceased murdering the said Banks. We think it was also erroneous in requiring the jury to find that Banks was being assaulted by the deceased with a deadly weapon before appellant would have the right to act in defense of Banks. While the testimony shows that deceased was assaulting Banks with the bottle, yet there is also testimony in this record to the effect that he had violently and viciously assaulted Banks with his fist and under this condition of the record it is not proper to limit the appellant's right to defend Banks against the assault made by deceased with a deadly weapon. On the other hand, she was authorized to defend against an attack on Banks which was less than deadly provided she used no more force than to her seemed reasonably necessary. On another trial we think the learned trial judge should correct his charge to conform to the suggestions herein made. Britton v. State, 253 S. W. 518; Schutz v. State, 257 S. W. 880; Dickey v. State 268 S. W. 462.

For the errors above discussed, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.